ARKANSAS GENERAL UTILITIES COMPANY *v.* WILSON, ADMR.

4-5307                                        122 S. W. 2d 956

Opinion delivered December 19, 1938.

352

*Isgrig & Robinson,* for appellant.

*Will J. Irvin* and *Russell J. Baxter,* for appellee.

SMITH, J. Late in the afternoon of May 8, 1937, James Dodd, a man forty-five years of age, was walking towards the business section of Wilmar, Arkansas, upon a dirt sidewalk in what is known as the negro quarter in that town, when he came in contact with one of appellant's electric wires, and was killed by the electricity with which the wire was charged. The wire was broken between the two poles to which it had been attached, and was charged with 2,300 volts of electricity. It is not denied that deceased was killed by coming in contact with one of appellant's live electric wires, but the suit brought by his administrator was defended upon the ground that, during a violent thunderstorm which occurred that afternoon, the wire had been struck by a flash of lightning which caused it to fall to the ground, leaving a part attached to each of the poles upon which it had been suspended. There was testimony to the effect that a cross-arm on a pole to which the wire was attached presented the appearance of having recently been struck by lightning, the wire being broken between the cross-arm and the next pole. There was opposing testimony to the effect that a sliver in the cross-arm ''was out at the end, like where you run an auger through a piece of wood and the splinters stick out.''

The theory upon which the case was tried and submitted to the jury is reflected in instruction numbered 1, which reads as follows: ''You are instructed if you find from a preponderance of the evidence in this case that on May 8, 1937, the defendant, Arkansas General Utilities Company, owned, maintained, and operated in the town of Wilmar, Drew county, Arkansas, a distribution system of electric lights, and that it negligently and carelessly permitted a certain of its wires charged with electricity in the McKinstry quarters of said town to become slack, sagging and uninsulated, and if you further find from a preponderance of the testimony in this case that solely on account of such sagging and uninsulated condition, if any, of said wires, two came in contact, causing one to break and fall to the ground or the

sidewalk where the public was accustomed to travel, and that the plaintiff's intestate, without any fault or carelessness on his part, came in contact with said fallen wire and was killed by the current with which said wire was charged proximately from the result, if any, of the sagging, slack and uninsulated condition of said wire, then you will find for the plaintiff.''

This and other instructions to the same effect submit to the jury the questions whether the wires were slack or sagging and were uninsulated, and their necessary purport is that the wire should have been kept taut and should have been insulated, and that the failure so to do was negligence. This theory of the case is shown by the following question and answer asked W. T. Alexander, an electrician, who testified in appellant's behalf as an expert witness: ''Q. Now, Mr. Alexander, even though such electric wires are allowed to become loose and sag to such an extent that a wind were to blow them together, even under those circumstances would it be possible for the wires to short and burn in two if they were properly insulated? A. It would not.''

Appellee's testimony was to the effect that the insulation on the wires had become ragged, so that parts of the wire were not insulated, and that they had sagged or slackened to the extent that the wind might blow them together so that they would touch. The testimony was, also, to the effect that the wires were suspended on poles 22 feet above the ground.

The instructions apparently tell the jury that the failure to insulate was an act of negligence, and they were specifically objected to on that ground. But this is not an absolute duty, to be performed under all circumstances. In the recent case of *Arkansas Power & Light Co* v. *Cates,* 180 Ark. 1003, 24 S. W. 2d 846, it was said that ''This court has recently held: 'There is involved here no question about the duty of the electric company to insulate all its wires. The authorities appear to be unanimous in holding that there is no such duty, but the cases do hold, as we understand them, that this duty must be performed, or other sufficient safety methods employed to prevent contact with wires conveying the

current at such places as danger of contact may reasonably be anticipated.' *Hines* v. *Consumers' Ice & Light Co.*, 168 Ark. 914, 272 S. W. 59; *Morgan* v. *Cockrell*, 173 Ark. 910, 294 S. W. 44; 9 R. C. L. 1213, § 21.''

In the case of *Arkansas Power & Light Co.* v. *Hoover*, 182 Ark. 1065, 34 S. W. 2d 464, it was said: ''We have repeatedly held that it was the duty of the company to keep its appliances in safe condition, and that either the wires must be kept insulated, or must be so located as to be, comparatively speaking, harmless. If the company does not choose to properly insulate a deadly wire of its maintenance, it must place the same under ground, at a high altitude, or at some inaccessible place.'' Stringing the wire twenty-two feet above the path would appear to be placing it at an inaccessible place, where insulation would not be required, as no one would likely come in contact with it in that position. We think, therefore, that it was error to predicate negligence upon the failure to insulate.

However, if the wires were not insulated, it became and was the duty of the appellant to use the commensurate care to see that these uninsulated wires did not come in contact with each other, and, if it negligently failed to discharge that duty, it would be responsible for the consequences of its negligence.

The testimony is sufficient to present the issue for the consideration and determination of the jury whether the wires had been properly installed, and, if so, whether there had been negligence in failing to maintain them in that condition; and, in the determination of that question, it would not be improper for the jury to take into account the fact that the wires were not insulated.

For the error indicated the judgment must be reversed, and the cause will be remanded for a new trial.

Humphreys and Mehaffy, JJ., dissent.

Humphreys, J. (dissenting). The judgment in this case was reversed because a majority of the court interpreted instruction No. 1 and other like instructions as telling the jury that unless the wires were insulated and kept taut the failure to do so constituted negligence on the part of appellant, the Arkansas General Utilities

Company. In other words, that a duty rested upon appellant to do both these things in order to escape liability. I do not think such was the purport of instruction No. 1 or any other instruction given by the court. The purport of the instructions was to tell the jury that if the sagging and uninsulated condition of the wires was the sole cause of the injury then appellant would be guilty of negligence and responsible for the death of deceased. There is no question that the wires came in contact, burned in two and fell to the ground where appellee, without fault on his part, came in contact with them and was killed on account of the current they carried. The undisputed evidence shows that the wires were properly insulated when installed and, not only so, but that they were taut and hung 22 feet above the ground. There is much evidence in the record to the effect that appellant not only permitted the insulation on the wires to become worn and ragged, but that it permitted them to sag so that they might be blown together, burn in two and drop to the ground and endanger the life of any one who came in contact with them. This court laid down the rule in the case of *Arkansas Power & Light Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. 2d 846, and re-announced the rule in the case of *Arkansas Power & Light Co.* v. *Hoover,* 182 Ark. 1065, 34 S. W. 2d 464, to the effect, in substance, that a company maintaining high-power lines must either insulate them or it must place them under ground, or at a high altitude, or at some inaccessible place and that a failure to do so constituted negligence and, also, that such duty rested upon an electric company to maintain its wires in a safe condition. Under the rule announced in the cases cited it was appellant's duty either to maintain the insulation in good repair or else to maintain them in a taut condition and in such position that they would not contact each other and burn and fall on the ground. If the electric company had properly maintained the insulation or had properly maintained taut wires 22 feet above the ground it would not have been negligent in the installation or maintenance thereof. Proper maintenance was just as important as proper installation in order to prevent injury to persons who might come in contact with

them without fault on their part. It must either maintain the insulation or else maintain the wires in such position and condition as to prevent them from contacting each other and burning and falling to the ground so as to endanger passers-by. Under the situation in the instant case, appellant would have been liable for a failure to perform its duty in either respect and the instructions complained of met the requirements of the rule as applied to the facts herein.

I think the majority have misconstrued the meaning of the instructions or, at least, have interpreted their meaning differently from what I do or from the meaning the jury, had a right to give them. In my view of the meaning of the instructions as applied to the facts, the judgment herein should have been affirmed instead of being reversed and remanded for a new trial without taking into account the worn and ragged condition of the insulation on the wires.

Mr. Justice MEHAFFY authorizes me to state that he concurs in this dissenting opinion.