ARKANSAS POWER & LIGHT COMPANY *v.* PRINCE.

4-8856                                          219 S. W. 2d 766

Opinion delivered April 25, 1949.

*House, Moses & Holmes,* for appellant.

*J. C. Cole,* for appellee.

HOLT, J.  John M. Prince, appellee, sued appellant, Power Company, for a substantial sum to compensate for personal injuries alleged to have been received at about 3:30 in the afternoon on January 15, 1948, while he was assisting his brother and father in lifting a 1¼-inch metal pipe from a well and the pipe came in contact with a 7,620-volt electric wire.  He alleged, in effect, (1) that appellant was negligent in stringing its uninsulated wire over the corner of his brother's, B. L. Prince, yard without right and was a trespasser, (2) that its power poles so resembled telephone poles as to confuse appellee, (3) that appellant strung its uninsulated wires at an insufficient height to prevent physical contact, and (4) allowed the electric wire in question here to sag to a point where it would be dangerous.

Appellant denied any negligence on its part and affirmatively pleaded contributory negligence of appellee.

From a judgment in the amount of $1,500 is this appeal.

For reversal, appellant earnestly contends (1) that there was no substantial evidence to support the verdict and that the court erred in refusing its request for an instructed verdict at the close of all the testimony, (2) that there were errors in certain instructions, and (3) that the verdict was excessive.

The conclusions we have reached make it necessary to consider appellant's first contention only—the sufficiency of the evidence.

The evidence, considered in the light most favorable to appellee, as we must, was to the following effect. Appellee's brother, B. L. Prince, owned a 163-acre farm on Route 2, Bismarck, Arkansas, near the Caney Community, at an intersection of the highways to Hickory Grove and Antioch.  At the time of the injury, appellee and his father were employed by, and assisting B. L. Prince, in lifting a 30-ft. water pump pipe from a well in the front yard of B. L. Prince, when the pipe, while thus being elevated, swayed approximately 9 feet from

perpendicular, came in contact with appellant's high voltage uninsulated electric wire, resulting in appellee's injury. The wire in question was approximately 23 feet from the ground with no appreciable sag. The power line was of recent and general approved construction, having been placed there in March, 1947, and was installed according to the standards set forth by the U. S. Department of Commerce and the Arkansas Public Service Commission, in fact, appellee so conceded.

Appellant's witness, Walsh, an electrical engineer, on direct examination, testified that the high voltage wire in question was 23 feet above the ground and that there was a neutral wire beneath 20 feet from the ground which carried no electric current, that "the code requires that wire be 19 feet high." "Q. Now, what does the regulations of the Department of Commerce require for a line of that kind to be above the ground for that voltage? A. Well, that type of line is covered by a safety code and Rule 232A entitled Basic Clearances, and at that particular location comes under the designation. . . . The Court: For the particular place over there read the regulations pertaining to that requirement and that will be sufficient. A. Locations entitled Public Streets, Alleys or Roads in urban or rural districts, now for lines of voltage. . . . Mr. Cole: If it will help any and to save time, the plaintiff admits into the record that the construction of the line so far as the type of material and the height from the ground and the type of pole and type of insulators all meet the requirements."

Appellee knew that appellant's high voltage wire was strung on poles along the highway, but did not know that it was over a part of his brother's yard, as indicated. He knew that his brother, B. L. Prince, had electricity in his home. He had helped his brother install the electric pump at the well and testified that the electric current leading from the house to the pump had been cut off, in fact, the wires disconnected and laid back. He testified that he did not know that the wire in question was above the well, but admitted that it was

in plain view and that there was nothing to prevent his seeing it had he looked.

In these circumstances, the burden was on appellee to establish some act of negligence on the part of appellant before he could be entitled to recover.

After a careful review of all the testimony, we are unable to find any substantial evidence of any act of negligence on the part of appellant that would warrant recovery.

Appellee conceded that appellant had constructed its practically new line in a modern and approved manner, as above indicated. It was in a rather sparsely settled farming area and the line was in plain view for all to see. He argues, however, that since there was substantial evidence that appellant was a trespasser, or had erected the line in question over the corner of his brother's yard without right, this was such negligence as would justify a recovery. We cannot agree.

The rule in a trespass situation is stated in 18 Am. Jur., § 96, p. 490, as follows: "On or Over Private Property. . . . Thus, the Company is liable where . . . it maintains an uninsulated high-voltage wire over farm land and the owner thereof was killed when an iron pipe he raised over his head came in contact with the wire (which was 17 ft. above the ground). But the circumstances must be such as to show some negligence on the part of the electric company. The mere maintenance of the high-tension transmission line is not wrongful; and in order to hold the owner liable for an injury, he must be shown to have omitted some precaution which he should have taken."

In the case, in support of the text, cited by the text writer (footnote 17), *Card* v. *Wenatchee Valley Gas & E. Co.* (1914), 77 Wash. 564, 137 Pac. 1047, the principle act of negligence on which recovery was allowed was the fact that the wire in question was strung only 17 feet above the ground. Here, the wire was 23 feet above the surface, in a sparsely settled rural community in plain view.

We said in *Arkansas General Utilities Company* v. *Wilson, Adm'r,* 197 Ark. 351, 122 S. W. 2d 956: " 'We have repeatedly held that it was the duty of the company to keep its appliances in safe condition, and that either the wires must be kept insulated, or must be so located as to be, comparatively speaking, harmless. If the company does not choose to properly insulate a deadly wire of its maintenance, it must place the same under ground, at a high altitude, or at some inaccessible place.' Stringing the wire twenty-two feet above the path would appear to be placing it at an inaccessible place, where insulation would not be required, as no one would likely come in contact with it in that position. We think, therefore, that it was error to predicate negligence upon the failure to insulate."

In *Arkansas Power & Light Company* v. *Hubbard,* 181 Ark. 886, 28 S. W. 2d 710, Mrs. Hubbard was assisting others in erecting a sign in front of her husband's place of business. They were raising a pine pole from 24 to 25 feet long to be set in a hole some four feet deep. The sign was attached to the pole. There was a high voltage uninsulated transmission wire about 19 feet overhead. As the pole was being raised into position, the sign, attached to it, contacted the live wire and appellee was injured by the current. There were four people attempting to raise the pole. We there said: "It must have been apparent to any one of ordinary prudence that there was danger that the pole might fall before it reached the perpendicular, and was set in the ground, and that, if this happened, the pole would come in contact with the bare high-tension wires of the appellant. The appellee knew that the transmission wires were electric wires, but seeks to avoid the consequences of her negligent act by the statement that she did not know the wires were dangerous. . . .

"In the case at bar the appellee is a woman of mature years and of sound business judgment, and at least of ordinary intelligence, for she is shown to be capable of managing the business in which she and her husband are engaged, and of earning more than $100 a month. Electricity is used in connection with her busi-

ness; her home and place of business are lighted by electricity. Appellee must have known that the transmission line, before reaching her place of business, had served others along its route, and that it extended on beyond to a neighboring town carrying on its wires the energy sufficient to serve the needs of that community. Common experience and observation must have given her knowledge that these wires carried a considerable voltage, and that they were dangerous, and whether or not she knew of the dangerous character of the transmission wires, the true test is, what would one of ordinary prudence and caution be presumed to know with reference to such wires, and what would one of such caution and prudence do or refrain from doing under similar circumstances? *St. L. S. F. R. Co.* v. *Carr,* 94 Ark. 246, 126 S. W. 850; *Bulman Furn. Co.* v. *Schmuck,* 175 Ark. 442, 299 S. W. 765, 55 A. L. R. 1039. . . .

"Under the undisputed facts of this case, we are of the opinion that the appellee was guilty of negligence contributing to her injury, which bars recovery on her part. The judgment of the trial court is therefore reversed, and the cause is dismissed."

For the error indicated, the judgment is reversed and since the cause appears to have been fully developed, it will be dismissed.

Justices McFADDIN and MILLWEE dissent.

Justice GEORGE ROSE SMITH concurs.