ARKANSAS POWER & LIGHT COMPANY v. LUM.

5-200                                    262 S. W. 2d 920

Opinion delivered November 23, 1953.

Rehearing denied January 11, 1954.

*Mahony & Yocum,* for appellant.

*Spencer & Spencer,* for appellee.

WARD, J. Henry Lum, an employee of the State Highway Department, while working with a crew of men in replacing a bridge on Highway No. 82 about one mile west of El Dorado, met his death by electrocution. While the dragline crew was attempting to place a heavy tile in position, the cable on the dragline made contact with a

high voltage wire belonging to the Arkansas Power and Light Company and in some manner the deceased contacted the cable and was severely burned on his hands and feet, resulting in death. Suit was instituted by Mary Cain Lum, widow of the deceased, in her own right and as next friend of Leona Pearl Lum, age 13, and Omer Dean Lum, age 4, resulting in a substantial judgment in favor of appellees.

*Factual Statement.* The Highway Department crew of which the deceased was a member was engaged in removing a small wooden bridge and replacing it with a large tile culvert. The culvert was to consist of several joints of tile each of which was about 5 feet in length, approximately 66 inches in diameter, and weighed approximately 7,000 pounds. Each joint of tile was placed in position by means of a dragline, and in each tile there was a hole midway between the ends through which the cable on the boom of the dragline could be inserted and attached. The accident occurred while the highway crew was attempting to place in position the last joint of tile. After the cable had been attached to the tile by the deceased and two others an attempt was made to lift it by the machinery described above, and in doing so the cable made contact with the high voltage electric wire. One of the things which apparently caused the contact with the live wire was that when the lift was attempted the joint of tile rolled over in the direction of the high voltage line and this was, apparently, due to the fact that the hole in the tile through which the line was attached was not on the top side of the tile as it was then lying but was on the side away from the high voltage line.

At the place where the tile was being substituted for the old bridge the surface of the highway is some 9 or 10 feet higher than the ditch or swag in which the tile was being placed. The highway right of way at this point is 60 feet wide and the concrete slab is 18 feet wide. Appellant's wires, which ran along the north side of and close to the north boundary of the highway, were situated in this manner: One of the supporting poles was located 86 feet east of the old bridge and another one was located

194 feet west of the bridge. The poles were about 35 feet in length and were set in the ground about 5 feet, not on the highway right of way. It is approximately 31 feet from the east pole to the center of the highway and approximately 32 feet from the west pole to the center of the highway. The cross arms are 8 feet in length and support 3 wires attached with insulators. The wire on the south side of the cross arm—the one with which contact was made—is approximately 25 feet above the ground at the east pole and is approximately 27 feet above the bottom of the swag in which the men were working. The distance from the contacted wire to the ground on each side of the swag is approximately 23½ feet. The contacted wire carried 13,800 volts, and the point where it was contacted was approximately 25½ feet from the north edge of the pavement and was about 18 feet higher than the pavement. The ground under the wire was not suited for traffic and was not ordinarily so used.

The testimony, about which there is practically no dispute as it relates to the issues involved, discloses the following facts and circumstances immediately attending the fatal injury: Just before the operator of the dragline attempted to lift the tile as stated above he made a practice swing of the boom in the presence of the deceased to see if it would clear the electric wire [which was later contacted] and it showed that the wire would be cleared by 4½ or 5 feet; the foreman, Mr. Batson, the deceased, and one other man connected the cable with the tile and just before the lift was attempted the foreman cautioned everyone to get back from the tile to a place of safety; the deceased did move away some 5 to 10 feet although at the time the accident occurred no one was looking at the deceased or knew exactly how he made contact with the electric current; due to the position in which the tile was lying at the time the cable was attached it was recognized that it would have a tendency to roll to the north [in the direction of the contacted wire] and consequently a piece of wood was placed on the north side of the tile to hold it in place; however when the lift began the joint

of tile did roll or swing to the north and the cable attached to the boom made contact with the wire; although no one saw the deceased put his hands on the cable or tile the conclusion must be drawn that he did so. The deceased was burned severely on his hands and feet and the evidence discloses that this could not have happened without his having touched the tile or the cable. In the complaint the following allegation appears: "That the deceased, Henry Lee Lum, in moving out of the way of the cement tile placed his hand thereon and received the full impact of the power carried by the high line of the defendant." The contacted electric line was not insulated.

There is no allegation or contention by appellees that the wires, poles, or cross arms were in any way defective or that they were not up to standard in every respect, excepting of course the elevation and the lack of insulation of the wires.

The allegations of negligence contained in appellees' complaint are:

1. In failing to insulate the power line in the area of the "filled" portion of the highway.

2. In failing to maintain the same vertical clearance between the highway surface and the power line at the point of the "fill".

3. By maintaining the power line so close to the highway surface as to render the use of the highway by equipment which they knew, or should have known, would be used thereon, dangerous.

4. In failing to maintain a safe vertical clearance distance between the lines and highway at a place where death occurred.

Allegation (1) need not be considered separately for the reason, as later shown, there was no duty on appellant to insulate the wire in question provided there was no negligence in maintaining it at the height it is shown to be. Allegations (2) and (4) need not be separately dis-

cussed because they are included in the general issue of negligence as later set out.

As we see it the main allegation of negligence is contained in subdivision (3) and as applied to the facts in this case, it may be more fully stated in the following way: Did appellant know, or by the exercise of ordinary care and foresight should it have known that its wires were so located as to constitute a dangerous situation, and should it have anticipated that the bridge would at some time have to be repaired, and by the use of equipment such as was used here, and further that in the process of such a repair operation injury was likely to result because of contact with the wire in the manner it happened here?

At the close of the evidence offered by the appellees and again at the close of all of the evidence offered by both parties appellant requested a directed verdict on the grounds, (1) that the appellees have not shown any negligence on the part of appellant and (2) that all of the evidence shows that deceased was guilty of contributory negligence as a matter of law. The trial court overruled these motions and a reversal is urged on the grounds above stated. The conclusion we have reached makes it unnecessary to consider the second ground because, in our opinion, there is no evidence of any negligence on the part of appellant.

It is not disputed that the deceased as well as all other members of the highway crew was fully aware of the position and location of the electric wires and that the same condition relative to their location existed during the 8 or 10 days the crew had been working. It is not disputed that appellant had a right to place its lines on its own right of way and had a right to construct and maintain the same as provided in Ark. Stats., § 35-301. The evidence shows that the wire at the point of contact was close to 18 feet higher than the surface of the highway, that it was approximately 25 feet north of the blacktop and that it was approximately 27 feet above the bottom of the swag in which the men were working and ap-

proximately 23½ feet above the ground on each side of the swag.

The National Electrical Code was introduced in evidence and both sides cited portions dealing with the vertical height of high voltage lines. We agree with appellant that it specifies a vertical height of 18 feet in rural areas such as the location under consideration and 20 feet in urban areas. The fact that traffic was sometimes heavy on highway No. 82 at this point was immaterial because it is not established that heavy traffic had any connection with the accident. Conceding that appellant should have known that the bridge would some day have to be repaired and that equipment similar to that here used would have to be employed still it does not seem reasonable that appellant could have known or anticipated the combination of circumstances and events which caused the injury to the deceased in the manner in which it occurred here. It is unreasonable to say appellant should have anticipated that the cable would be attached to the tile in such a manner that it would cause the tile to roll or swing when it was lifted or that it could anticipate that some employee would be close enough to it to cause contact with the cable in the event it made contact with the highline.

The degree of care on the part of appellant in erecting and maintaining its wires is set forth in *Morgan* v. *Cockrell,* 173 Ark. 910, 294 S. W. 44. In this case the trial court instructed the jury [instruction No. 1 at page 913 of the Arkansas Reports] that the power company owed "the public a high degree of care" to keep its wires properly suspended. In reversing the trial court on this point the court said:

"The trial court appears to have had an erroneous view of the degree of care required of appellant in the maintenance and operation of its light wires for giving service to the city, as shown in instruction No. 1, which stated that it 'owed the public a high degree of care,' and that, if the defendant 'failed to exercise a high degree of care,' etc., and the deceased was injured 'while in the

exercise of ordinary care for his own safety,' plaintiff should recover, apparently requiring the use of a higher degree of care of the appellant than ordinary care, as required under the law.''

The court then, after citing and quoting from a number of cases, said:

''It will be seen from these decisions that it has long been the settled law in this State that electric companies, in the stringing and maintaining of their wires in the streets of the cities to give service to the public, are only bound to the exercise of ordinary and reasonable care for the protection of all who have right to the use of the streets, such reasonable and ordinary care varying with the circumstances of each case, having in view the dangers to be avoided and the likelihood of injury therefrom, which may require a high or the highest degree of care under the particular circumstances. The court erred in disregarding this rule in giving said instruction No. 1, . . .''

From the above quotation it will be noted that the circumstances and surroundings in each case may have some bearing on the degree of care, and appellees lay stress on the fact that Highway No. 82 at this point was heavily traveled. We cannot agree that this circumstance has any bearing here because, as previously stated, it is not alleged or contended that the accident was in any way caused by or connected with traffic on the highway at that time.

The evidence shows that the contacted wire was 2 feet and 3 inches over on the right of way at one point but it is not clear at just what point, therefore, it is argued, appellant was a trespasser. Again it is not pointed out how this particular fact contributed to the accident. Moreover the answer to this contention is found in *Arkansas Power & Light Co.* v. *Prince,* 215 Ark. 182, 219 S. W. 2d 766.

The contention of appellees that the absence of insulation on the contacted wire is also answered in the *Prince* case, in *Arkansas General Utilities Company* v.

*Wilson, Admr.,* 197 Ark. 351, 122 S. W. 2d 956, and other decisions of this court. The applicable rule is that a power company has the duty of either *insulating* or *isolating* its wires in a particular case. As before stated, we are here holding that appellant's wire was properly isolated under the circumstances. This view makes it unnecessary to consider testimony tending to show the futility of insulating a wire carrying 13,800 volts.

In view of all the facts and circumstances in this case we are unable to see disclosed any act of negligence on the part of appellant which a jury could say was the proximate cause of the accident. Negligence on the part of appellant cannot be presumed because there was an accident. In *Export Cooperage Company* v. *Ramsey,* 133 Ark. 336, 202 S. W. 468, this court, quoting from *St. Louis and San Francisco Railroad Co.* v. *Wells,* 82 Ark. 372, 101 S. W. 738, said:

"Negligence of the company can not be inferred merely from the occurrence of the accident. That must be proved, and the burden of establishing it is on the party who alleges it."

It is recognized generally as well as by the courts that electric utility companies, such as appellant, must meet the public demand for a ready and adequate supply of power. In doing so they are not insurers against accident or injury, and are not held liable for such as can not be reasonably foreseen. The duty imposed in such instances is well stated in Vol. 29 C. J. S., pages 573-4, under the general heading of electricity:

"Electrical companies are not insurers of the safety of the public nor of those whose occupation is likely to bring them into dangerous contact with their appliances, and hence are not liable for injuries unless guilty of some wrongful act or omission. The failure of a power company to anticipate and guard against events which may reasonably be expected to happen is negligence, but a failure to anticipate events occurring only under unusual circumstances is not negligence. There can be no recov-

686

ery against an electric company in the absence of a breach of some duty owing to the injured person."

Since, as we see it, the only alleged act of negligence on the part of appellant that could be relied on here by appellees is the position, relative to vertical height, of the contacted wire, and since we conclude that this condition was not the proximate cause of the accident and, further, that it is not shown appellant violated any custom or safety code in the installation or maintenance of its wires in this instance, the judgment of the trial court is reversed and the cause of action is dismissed.

Justices HOLT and MILLWEE dissent.