Greg THORNTON *v.* ARKANSAS VALLEY ELECTRIC COOPERATIVE CORPORATION and Centurytel, Inc.

CA 05-1234                                            234 S.W.3d 915

Court of Appeals of Arkansas
Opinion delivered May 3, 2006

*John Terrell Holleman*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Alston Jennings, Jr.*, for appellee Centurytel, Inc.

*Friday, Eldredge & Clark, LLP*, by: *James C. Baker, Jr.*, and *Kimberly D. Young*, for appellee Arkansas Valley Cooperative Corporation.

L ARRY D. VAUGHT, Judge. Appellant Greg Thornton argues that the trial court improperly granted summary judgment to appellees Centurytel, Inc., and Arkansas Valley Electric Cooperative resulting in the dismissal of his personal-injury action. We find no error in the trial court's determination and affirm.

On August 2, 2002, Greg Thornton was injured when an energized electrical line owned by Arkansas Valley arced into his back. At the time of his injury, Thornton was employed by Big Mac Mobile Homes and was delivering a mobile home. In order to place the mobile home in the spot designated by its new owners, it had to be moved under three overhead lines — one telephone line and two electrical lines. The telephone line — which was the lowest hanging line — was owned by Centurytel, Inc. The middle line was a neutral line owned by Arkansas Valley, and the highest line was an energized electrical line owned by Arkansas Valley.

The mobile home was too tall to go underneath the telephone line without contact. Thornton and a coworker stood on the roof of the mobile home while it was moved underneath the telephone and electrical lines. The men were warned about the

dangers of the electrical line and its proximity to the mobile home by their supervisor. After discussing the danger, the men decided that they would simply bend down low enough to avoid contact with the energized top line. Unfortunately, Thornton came too close to the electrical line and suffered a contact injury.

Thereafter he filed suit against Centurytel and Arkansas Valley, seeking compensation for his injuries. Centurytel answered, alleging that any injury Thornton suffered was a result of his own negligence and assumption of risk. Specifically, Centurytel argued that Thornton's complaint failed to allege how Centurytel's negligence proximately caused his injuries. Arkansas Valley answered Thornton's complaint by arguing that it had no duty to Thornton. The trial court granted each utility summary judgment and this appeal followed.

Pursuant to Arkansas Rule of Civil Procedure 56, summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003). We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. *Ponder v. Gorman*, 94 Ark. App. 159, 227 S.W.3d 428 (2006). Once the moving party has established a prima-facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. *Id.*

First, we turn our attention to the trial court's decision to grant Centurytel's motion for summary judgment. Thornton alleged that "but for" the low-hanging telephone line, he would not have been on top of the mobile home. In support of this claim he submitted a statement from his engineering consultant, Paul Mixon, stating that the telephone line did not meet the requirements of the National Electrical Safety Code because it was less than ten feet above a "residential driveway." However, Mixon did

concede that the line was eight and one half feet above the ground and that the Code called for a clearance of only eight feet when there was no driveway in place.

■ Assuming arguendo that Thornton successfully created a question of fact as to the height requirement for Centurytel's line — eight or ten feet high — this fact question alone is insufficient to overcome Centurytel's summary-judgment motion. Thornton does not argue that any particular telephone-line clearance (residential or otherwise) would have avoided the accident. Specifically, he provided no evidence that Centurytel was negligent or that any negligence of Centurytel proximately caused his injury. At a very minimum, Thornton is required to allege breach of a legal duty owed to him, which proximately caused his injury, and he is required to reveal this theory to the court and to Centurytel. Accordingly, because Centurytel supported its motion for summary judgment by making a prima-facie showing of an absence of factual issues and entitlement to judgment as a matter of law, and the adverse party failed to set forth *specific facts* showing a genuine issue of material fact, summary judgment was properly granted. *See Pyle v. Robertson*, 313 Ark. 692, 694, 858 S.W.2d 662 (1993).

Next we consider the trial court's grant of summary judgment to Arkansas Valley based on its contention that it owed no duty to Thornton because it was not given sufficient notice of the work to be done near its power line. Arkansas Code Annotated section 11-5-307 (Repl. 1996), provides:

> (a)(1) When any person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any energized overhead electrical line or conductor than permitted by this subchapter, the person or persons responsible for the work to be done shall promptly notify the Director of the Department of Labor and the operator or owner of the electrical lines in writing of the work to be performed and make appropriate arrangements with the operator of the electrical lines before proceeding with any work which would impair the clearances required by this subchapter.

> (2) The written notice shall be given to the owner or operator of the electrical lines by submitting notification to the manager of the nearest local office of the operator or owner of the electrical lines with a copy forwarded to the director.

(b)(1) The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner and operator of the electrical lines and the person or persons responsible for the work to be done.

(2) The owner or operator of the electrical lines shall commence work on the mutual arrangements as provided herein within three (3) working days of the mutual arrangement. Once initiated, the clearance work will continue without unreasonable interruption to complete.

Although Thornton concedes that neither he nor his employer complied with the requirements of § 11-5-307, he maintains that a duty arose nonetheless because Arkansas Valley was notified of the construction by the third-party homeowner. The basis for this assertion comes from the deposition of Mr. Carl Newman, the owner of the lot where the mobile home was delivered:

A:  We called the electrical company, or my wife supposedly called the electrical company. Now this is hearsay what I'm telling you now. She called the electrical company, they come (sic) out there and they checked and measured, said it was standard, it was good check; the telephone line was the only thing that was down too low.

. . . .

A:  Well it was one of the engineers come out there and I helped measure it, and then they said that was standard height for that area.

Q:  About when, in relation to Mr. Thornton's injury, did this happen that they came out?

A:  Oh, about a week before.

As we begin our analysis considering whether Arkansas Valley owed a duty to Thornton, we are mindful that the existence of a legal duty is always a question of law and never a question of fact. *Clark v. Transcon. Ins. Co.*, 359 Ark. 340, 197 S.W.3d 449 (2004). As to this duty, our supreme court has recognized that electric utility companies must meet the public demand for a ready and adequate supply of power and, in doing so, they are not

insurers against accident or injury and are not held liable for such as cannot be reasonably foreseen. *Id.* However, an electric company does have a duty to inspect and maintain its power lines in proper and safe working order. *Stacks v. Ark. Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989). But, when a person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation within ten feet of an energized, high-voltage line, the electric utility has no duty until the electric utility receives "written notice" from the "person or persons responsible for the work." *See* Ark. Code Ann. § 11-5-307. Accordingly, without such notice, the electric company has no duty to those working near its lines. *Id.*

On appeal Thornton argues that although he and his employer did not technically comply with the statute, Arkansas Valley was placed on notice that work would be conducted near its line and that at that point a duty arose. In support of this argument Thornton relies heavily on our supreme court's holding in *Clark v. Transcontinental Ins. Co.*, 359 Ark. 340, 197 S.W.3d 449 (2004). Like this case, in *Clark*, the electrical company — Entergy — argued that it did not owe Mr. Clark a duty because it did not receive written notice that work would be conducted near its power lines as required by § 11-5-307. However, the court concluded that Entergy in fact had received notice sufficient to trigger a duty. Specifically, the court relied on the fact that Entergy had received a route slip titled "application for a Commercial Building Permit," which informed Entergy that plans of the building to be constructed were available for review. *Id.* at 350. The court went on to conclude that the notice was sufficient to create a duty on Entergy's part. *Id.* at 351.

In this case, there are three salient facts that distinguish Thornton's case from the factual predicate presented in *Clark*. First, the alleged "notice" was not from the affected employee or his employer; instead, it came from a third party. Second, the testimony of the third-party homeowner — when viewed in the light most favorable to Thornton — does not notify the electrical company that work was to be done. A circumspect reading of the homeowner's deposition merely establishes that Arkansas Valley was asked to come out and measure and "check" its lines. The homeowner's deposition, which is in most part hearsay, makes no mention of informing Arkansas Valley that there will be construction within ten feet of the line. Third, this alleged "notice" was

not in writing. These three factual distinctions greatly diminish the relevance of the *Clark* precedent as applied to this case.

■ It is undisputed that neither Thornton nor his employer notified Arkansas Valley in writing — or otherwise — that work would be conducted near its power line. To conclude that an oral hearsay statement from a third-party homeowner — establishing nothing more than the fact that Arkansas Valley was asked to "check" and "measure" its lines — amounts to the type of statutory notice required by § 11-5-307 would require a stretching of the statute beyond its breakpoint. We are unwilling and unable to ignore the rigors of statutory limits. Because Arkansas Valley was not properly notified that Thornton would be working within ten feet of its energized, high-voltage line, the electric company owed him no duty. Therefore, we affirm the trial court's decision to grant summary judgment in Arkansas Valley's favor.

Affirmed.

HART and ROAF, JJ., agree.