# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1231

_____

Robert William Koch, in his capacity    *
as Administrator, Estate of David Glenn *
Koch; Anthony Tucker, in his capacity    *
as Administrator, Estate of Roderick     *
Cook,                                        *
                                            *
         Plaintiffs – Appellants,    *
                                            *    Appeal from the United States
    v.                                 *    District Court for the
                                            *    Western District of Arkansas.
Southwestern Electric Power Company,   *
a Delaware Corporation doing Business   *
in the State of Arkansas,             *
                                            *
         Defendant – Appellee.     *

_____

Submitted: September 26, 2008
Filed: October 14, 2008

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Robert William Koch and Anthony Tucker brought this tort action asserting that Southwestern Electric Power Company ("SWEPCO") was negligent in locating and maintaining its power lines, causing the electrocution deaths of David Glenn Koch and

Roderick Cook. The district court[1] granted SWEPCO's motion for summary judgment, and Koch and Tucker appeal. We affirm.

Appellants' decedents, David Glenn Koch and Roderick Cook, were employees of International Tentnology Corporation (InTents), a company that provides and installs equipment for events and parties. On October 14, 2004, decedents were setting up a tent for the Chile Pepper Festival, a prominent cross country meet which has been held annually since 1992 and attracts some 7500 people. The Chile Pepper Festival is held in an open field at the University of Arkansas in Fayetteville which is used by the university for agricultural experiments, but is also the site of large cross country meets several times a year. At the time of the accident Koch and Cook, as well as four other employees of InTents, were moving a large, fully assembled hexagonal tent across the field. To avoid a temporary mesh fence in their path, they attempted to lift the tent over it. The aluminum center support pole of the tent hit an energized overhead power line and three of the men, including Koch and Cook, were fatally electrocuted. Three others were severely injured. The administrators of the estates of Koch and Cook brought this action against both SWEPCO and InTents; InTents has meanwhile settled the claims against it.

SWEPCO maintains and operates the power line traversing the field. Appellants concede that the line is at least twenty five feet above the ground and complies with National Electric Safety Code clearance requirements. The line was installed at a time when the area was much more rural than it is today, and appellants contend that SWEPCO was negligent in not elevating, burying, or insulating the line now that the field is occasionally used for major public events.

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

The district court granted SWEPCO's motion for summary judgment on the ground that it had had no legal duty to the decedents because it had not received written notification that work would be occurring near the power line. The district court relied heavily on an intermediate court of appeals decision, Thornton v. Ark. Valley Elec. Coop. Corp., 234 S.W.3d 915 (Ark. Ct. App. 2006), which held that an electric utility has no duty to injured parties unless the utility is notified that work will be occurring within ten feet of a power line, citing Arkansas Code § 11-5-307. Appellants concede that no such notification was sent to the utility, but they contend that the district court erred in its application of Arkansas law and that SWEPCO owed decedents a duty of care.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Border State Bank, N.A. v. AgCountry Farm Credit Servs., FLCA, 535 F.3d 779, 782 (8th Cir. 2008). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Doe v. Dep't of Veterans Affairs, 519 F.3d 456, 460 (8th Cir. 2008). The existence of a legal duty is a question of law, which we review de novo. Young v. Gastro-Intestinal Ctr., Inc., 205 S.W.3d 741, 748 (Ark. 2005). In our interpretation and application of Arkansas law we are bound by decisions of the Arkansas Supreme Court, and we review the district court's interpretation of that law de novo. David v. Tanksley, 218 F.3d 928, 930 (8th Cir. 2000).

Under Arkansas statutory and common law, electric utilities have a "duty to act with reasonable care in the delivery of services." See Ark. Code Ann. § 23-3-113 (2008); Bellanca v. Ark. Power & Light Co., 870 S.W.2d 735, 736 (Ark. 1994). In Woodruff Electric Corp. v. Daniel, 472 S.W.2d 919, 922 (Ark. 1975), the Arkansas Supreme Court affirmed its longstanding rule that "the very nature of the business of an electric company requires it to use a high degree of care in the erection,

maintenance, operation, and inspection of its equipment . . . so as to prevent injury to one likely to come in contact with the power line." An electric utility falls short of its duty of ordinary and reasonable care when it fails "to anticipate and guard against events which may reasonably be expected to happen." Ark. Power & Light v. Lum, 262 S.W.2d 920, 924 (Ark. 1953). It is not negligent, however, to "fail[] to anticipate events occurring only under unusual circumstances," id., or those that "can not be reasonably foreseen." Clark v. Transcont'l Ins. Co., 197 S.W.3d 449, 454 (Ark. 2004).

Arkansas courts have repeatedly enforced this duty of ordinary and reasonable care. For example, in Stacks v. Arkansas Power & Light Co., 771 S.W.2d 754 (Ark. 1989), the Arkansas Supreme Court found that the electric utility owed a duty to a man who had been electrocuted by a sagging power line while he was fishing in a city owned pond. The accident was foreseeable to the utility because the mayor had earlier asked it to deenergize the line and affidavits in the record indicated that public recreational use of the pond was well known. Id. at 755. In the course of its holding, the court cited to numerous Arkansas cases establishing a utility's duty "to inspect and maintain its power lines in proper and safe working order. Id. (citing Ark. Power & Light Co. v. Johnson, 538 S.W.2d 541 (Ark. 1976); Ark. Gen. Utils. Co. v. Shipman, 76 S.W.2d 178 (1934); Ark. Power & Light Co. v. Cates, 24 S.W.2d 846, 851 (Ark. 1930) ("The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge, [but also] . . . to use active diligence to discover defects in its system.") (internal quotation marks omitted)). In Bellanca v. Arkansas Power & Light Co., 870 S.W.2d 735 (Ark. 1994), the Arkansas Supreme Court reversed the trial court's holding that no duty existed, noting that a "duty to act reasonably when supplying power" was well established in its own decisions and in the state code. Id. at 736.

The Arkansas Legislature has also expressed its own concern for workers injured by power lines. In 1963 the Legislature enacted a law with the purpose of "provid[ing] for the protection of persons engaged in work of any nature in the

vicinity of energized overhead electrical lines."  Ark. Code Ann. § 11-5-301(b)(1) (2008); id. §§ 11-5-301 to 11-5-309.  For example, the statute prohibits employers from requiring work within ten feet of a power line if accidental contact could be reasonably expected unless the power lines are deenergized or protective barriers are installed.  Id. § 11-5-308(a)–(c).  Another requirement, and one at issue in this case, is that anyone preparing for work within ten feet of a power line "shall promptly notify the Director of the Department of Labor and the operator or owner of the electrical lines in writing of the work to be performed and make appropriate arrangements with the operator of the electrical lines before proceeding with any work . . . ."  Id. § 11-5-307(a)(1).  A person who violates either of these provisions must pay a fine of up to $1000, and is liable to the owner or operator of the power line for all damages and costs, including losses and attorney fees "incurred by way of property damage or personal injury."  Id. § 11-5-305(a).

Before the district court and in its appellate brief, SWEPCO argued that it had no duty to the decedents as a matter of law because InTents had failed to provide the statutory notification.  At oral argument SWEPCO concentrated on the argument that it had no legal duty to decedents because it could not have foreseen that they would come into contact with the power line.  It conceded that the employer might have created a legal duty by providing notification according to § 11-5-307.

The traditional duty of care standard for electric utilities was reaffirmed by the Arkansas Supreme Court in a decision prior to the Thornton case on which the district court relied.  In Clark v. Transcontinental Insurance Co., a construction worker was severely injured when a steel beam he was handling touched a power line. 197 S.W.3d at 451.  The utility argued that it had not been given sufficient notice of the proximity of the construction activity to its line and that because it had not received the § 11-5-307 notification, it was not required to review the construction plans which would have revealed the risk.  Id. at 454.  The Clark court did not consider the absence of § 11-5-307 notification to be determinative on the issue of the existence of a legal duty.

Rather, the court engaged in a common law analysis of whether the injury was foreseeable. It ultimately held that a "route slip" sent by the city about the proposed work which also mentioned that construction plans were available for review "was sufficient to create a duty on [the utility's] part" to eliminate the safety hazard posed by the line. Id. at 456. By considering only the absence of a § 11-5-307 notification, the subsequent Thornton decision of the intermediate appellate court, on which the district court relied, took a narrower approach than the supreme court had in Clark.

Nothing in the language of § 11-5-307, nor its enactment as part of a law enhancing worker safety, indicates that notification is a prerequisite to a utility's legal duty of care. The statute makes a person who fails to provide notification liable for the utility's losses and attorney fees arising from a personal injury suit—such a provision would be inconsistent with a rule that an employer's failure to provide notification eliminates the utility's legal duty. We conclude therefore that the lack of any formal notification sent to SWEPCO regarding the Chile Pepper Festival does not, in itself, negate any common law duty that SWEPCO may have had towards decedents.

Appellants contend that because of the prominence of the events held on the agricultural field it was foreseeable that someone might come into contact with the power line. Because state law requires SWEPCO to inspect its lines continually, appellants assert that the company should have recognized that changed conditions required additional protective measures. In opposing SWEPCO's motion for summary judgment, they submitted a printout of the Chile Pepper Festival website showing that approximately 3500 runners and 4000 spectators have attended the race each year for the past sixteen years. They also submitted an investigative report by Dr. W. T. Cronenwett, which describes how the accident in this case occurred and explains the regulations applicable to the power line in question. Dr. Cronenwett's report makes conclusory statements, such as "it [i]s not unusual to move a fully erected tent," and "SWEPCO knew, or should have known, of the well-known cross-country

competitions . . . and setup preparations." He admitted at his deposition that the latter conclusion was based on what appellants' lawyer had told him.

In support of its motion for summary judgment SWEPCO submitted an affidavit from its district manager of operations, Richard T. Hopwood. Hopwood stated here that SWEPCO had no knowledge that tents were used at the Chile Pepper Festival or that any would be moved within ten feet of the power line. SWEPCO also submitted portions of the deposition of Bart Vollmer, the owner of InTents, in which Mr. Vollmer explained that the accident occurred as the tent was being moved to a location where it had not been placed in previous years. Vollmer also stated that it was not customary to carry a tent fully assembled over long distances, as was done on this occasion.

The record before the district court does not show that SWEPCO knew or should have known about the risk of an accident like the one which killed the decedents. The power line was twenty five feet above the field and appellants have not shown that SWEPCO was aware of the nature of the Chili Pepper Festival or that intact tents might be raised up in proximity with the power line. Moreover, InTents did not give SWEPCO a § 11-5-307 notification. We conclude that decedents' accident occurred under unusual circumstances about which SWEPCO had no notice, that it was not foreseeable, and that SWEPCO therefore had no legal duty to the decedents.

Accordingly, we affirm the judgment of the district court.

_____