SLIP OPINION

Cite as 2015 Ark. App. 214

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-843

| | |
|---|---|
| BUTLER & COOK, INC.<br><br>                APPELLANT<br><br>V.<br><br>OZARK WAREHOUSES, INC., d/b/a<br>CORRUGATED SPECIALTIES<br>                APPELLEE | **Opinion Delivered** April 1, 2015<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT, FORT<br>SMITH DISTRICT<br>[No. CV-2013-569]<br><br>HONORABLE J. MICHAEL<br>FITZHUGH, JUDGE<br><br>REVERSED and DISMISSED |

## LARRY D. VAUGHT, Judge

Appellant Butler & Cook, Inc. (B&C), appeals the order entered by the Sebastian County Circuit Court, finding in favor of appellee Ozark Warehouses, Inc., d/b/a Corrugated Specialties (Corrugated), on its negligence claim and awarding Corrugated $12,000 damages. On appeal, B&C argues that the trial court clearly erred in (1) finding that Corrugated suffered damages, (2) finding that B &C was negligent, and (3) failing to assign comparative fault to Corrugated. We agree with B&C's first and second points on appeal; therefore, we reverse and dismiss.

Corrugated produces boxes and packaging supplies. In January 2012, Corrugated sought to purchase a used rotary die-cutter machine from a company in Pennsylvania. The rotary die-cutter machine was a thirty-six-year-old, eighty-foot-long industrial machine used to print and die-cut corrugated boxes. Corrugated's plant manager, Rodney Canada, testified that Corrugated was interested in the machine because it had two print sections, which had the capability of printing two colors on a box. Each print section was supposed to have a top (called the print-

impression roller) and bottom roller, and box material was fed between the rollers for printing. The rollers are approximately nine feet long and made of cast iron.

Rodney Canada traveled to Pennsylvania to inspect the machine and observed that only one of the print sections worked. The other print section was inoperable because its print-impression roller was missing. According to Canada, the roller had been removed from the machine and was sitting outside under a covered dock. He testified that the roller had been sitting outside in the moisture and humidity, it was rusted, it had two cracks in it (one was a foot long and the other was six inches long), and it was missing an end plate, which prevented it from being installed into the machine and rotating on its axis. Canada testified that the roller was an unusable "pile of junk." He said that Corrugated opted to purchase the machine, with the broken roller "as is," for a $20,000 reduction in the sales price.

The machine was transported to Arkansas, and in February 2012, Canada contacted Ivan Cummings, a machinist and mechanic for B&C, to provide an estimate to repair the broken print-impression roller. Canada said that he showed Cummings the broken roller and told him that he wanted it to operate like the print-impression roller that was operable. Canada said that the repairs would include welding the two cracks in the roller and adding an end plate. Canada said that Cummings asked whether the roller needed to be "turned down."[1] Canada testified that he told Cummings the most the roller could be turned down was twenty one-thousandths of an inch. Canada said, "It has got to be parallel, it has got to be straight; that is the whole key to it."

---

[1]According to the testimony at trial, to "turn down" (also known as "true up") the roller meant that a lathe shaved or trimmed down the roller so that its diameter was the same thickness all the way around it.

Canada stated that if the roller was turned down too far, it would not work because the roller would not touch the boxes running underneath it and would not be able to print on them. Neither Canada nor Cummings took measurements of the roller.

On February 27, 2012, B&C tendered a sales order to Canada, offering to do the repairs to the roller for $7032.38. The sales order also provided:

REBUILD ROLLER FROM OLD ROLLER
***CAST IRON ROLLER, NO WARRANTY ***

Canada conceded that he did not include the specification that the roller could not be turned down more than twenty one-thousandths of an inch in the sales order and that, in hindsight, he should have. Nevertheless, he signed the sales order on March 28, 2012, and later that day B&C picked up the roller and transported it to its shop.

Cummings testified that Canada did not show him (Cummings) the roller from the operable print section and did not tell him the specification that no more than twenty one-thousandths of an inch could be taken off the roller. According to Cummings, the only instruction given by Canada was that the broken roller needed to be "trued up." Cummings said that the roller would not work unless it was true. Cummings testified that he told Roger Lane, the B&C machinist who turned down the roller, exactly what Canada instructed—that the roller had to be "trued up."

Matt Nicely, the fabrication-shop supervisor at B&C, testified that B&C welded the cracks in and fabricated a new end plate for the broken roller. Nicely testified that he did have concerns about the welds holding because of the age of the roller. He said that "[the roller was] worn out, it [was] fatigued out, its life span [was] up, and what I am going to do to it is probably

3

not going to hold." He added that based on the condition of the roller, he was surprised that he was asked to repair it. Accordingly, he asked that the sales order reflect that there was no warranty on the work.

After the cracks in the roller had been welded and the end plate added, Lane testified that he worked on the roller. Lane said that because the roller was "out of round," he was instructed by Cummings to "put [the roller] in the lathe and machine it until it was true across the diameter and the length of [the roller]." Cummings said that the roller "needed to be turned until the whole surface was true—100 percent clean up . . . until there is no deviation in the surface whatsoever." Lane said that Cummings did not give him any specifications or dimensions; however, Lane said that he was told to take off the minimum amount to make the roller "one-hundred percent cleaned up." Lane testified that he did not know the dimensions of the roller before he worked on it, he did not know how much iron he took off the roller, and he did not know the dimensions of the roller after he had worked on it.

In May 2012, B&C delivered the repaired roller to Corrugated, and Corrugated paid B&C $7032.38 for the repairs. Canada said that he did not take any measurements of the roller but that it looked good. The roller was installed into the die-cutter machine in June 2012. When Canada ran the first print job through the repaired print section, there was no print on the boxes because the gap between the repaired roller and the bottom roller was too wide.[2] Canada

---

[2]The repaired roller did not print on 3/16-inch box material, which was the type of boxes Corrugated worked with ninety percent of the time. The repaired roller did print on thicker box material—three-eighths of an inch or half an inch. However, the evidence demonstrated that Corrugated did not use 1/2-inch box material and used 3/8-inch box material ten percent of the time.

concluded that B&C had turned down the broken roller too much and reported his conclusion to B&C. B&C's response was that there was no warranty on their work. Corrugated's negligence complaint followed.[3]

On the issue of damages, Canada testified that the value of the roller before and after B&C worked on it was zero or scrap value. Over the objection of B&C, Canada added that the value of the roller—had it been properly repaired—would have been $20,000. Canada also testified that in an effort to make the repaired roller work, he had a print-impression blanket made. The blanket was wrapped around and adhered to the roller, adding approximately a quarter of an inch in diameter to it. Using the blanket, Canada testified that the repaired roller was able to print on boxes 3/16-inch thick and, while the printing was not perfect, for the past two years the machine had been printing two colors. Canada said that Corrugated paid $2998 for the blanket, which Canada testified was a temporary fix.

Rick Watson, the chief operating officer at Corrugated, testified that the value of the roller when it was purchased was $0 and that the current value of the roller was $0. He also testified (over the objection of B&C) that had the roller been repaired so that it would print on 3/16-inch thick boxes, it would have had a value of $12,000–$15,000. Watson testified that because the roller would not print on boxes 3/16-inch thick, Corrugated would have to purchase a new print-impression roller or a new print-impression blanket. He added that Corrugated had suffered and would suffer lost profits.

---

[3]Corrugated's complaint alleged that B&C failed to follow the instruction to reduce the diameter of the roller by only twenty one-thousandths of an inch, failed to monitor and measure the diameter of the roller as the repair work was being performed, and failed to perform the repair work in a workmanlike and skillful manner.

Thereafter, the trial court entered an order finding in favor of Corrugated on its negligence claim. Specifically, the trial court found that the "no warranty" provision in the sales order applied only to the welding work. The court further found that Canada told Cummings that the roller could be turned down not more than twenty one-thousandths of an inch and that this specification was not relayed to Lane. The trial court found that Lane was told by Cummings to true up the roller and too much was trimmed off the roller, which resulted in a roller that would not print on 3/16-inch box material. The court, applying the "before and after valuation method," found that Corrugated suffered $12,000 damages.[4]

B&C brings this appeal from the trial court's order. In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Schueck v. Burris*, 330 Ark. 780, 785, 957 S.W.2d 702, 704–05 (1997) (citing *Superior Improvement Co. v. Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980); Ark. R. Civ. P. 52).

In its negligence cause, Corrugated was required to prove that it sustained damages, that B&C was negligent, and that B&C's negligence was the proximate cause of its damages. *Schueck v. Burris*, 330 Ark. at 785, 957 S.W.2d at 705 (citing *Anselmo v. Tuck*, 325 Ark. 211, 924 S.W.2d 798 (1996)). B&C's first point on appeal is that the trial court clearly erred in finding that Corrugated proved damages.

The parties agree that the measure of damages to personal property is calculated by determining the difference in the fair market value of the property immediately before and

---

[4]The trial court denied Corrugated's request for lost profits and future damages, and Corrugated has not cross-appealed that issue.

immediately after the occurrence. *Sw. Bell Tel. Co. v. Harris Co. of Fort Smith*, 353 Ark. 487, 490, 109 S.W.3d 637, 638 (2003); *see also Daughhetee v. Shipley*, 282 Ark. 596, 600, 669 S.W.2d 886, 888 (1984). Arkansas Model Jury Instruction 2227 likewise provides that the measure of damages for injury to personal property is the difference in the fair market value of the property immediately before and immediately after the occurrence.[5] AMI Civ. 2227 (2014).

There was significant evidence at trial concerning the value of the roller before B&C began working on it. The roller was thirty-six-years old, rusty, cracked in two places, had no end plate, and was "out of round." Canada testified that it was a "a pile of junk." Nicely, who repaired the cracks and added the end plate, testified that the roller was worn out and fatigued. He said that its "life span [was] up" and that he was surprised that he was asked to repair it. Canada and Watson testified that the value of the roller when it was purchased was $0. Therefore, based on the undisputed evidence, the fair market value of the roller before B&C worked on it was $0. As for the fair market value of the roller *after* B&C worked on it, Canada and Watson testified that its value was $0. Applying the before-and-after-valuation method, Corrugated's damages are $0—the difference between $0 and $0. Therefore, Corrugated failed to prove the required element of damages.

We note that the trial court's order cited the proper measure of damages; however, it did not properly apply the evidence to that measure. The trial court found that Corrugated sought an award of $12,000–$15,000 for the roller and awarded $12,000. These figures came from

---

[5]The instruction includes a bracketed provision stating that "in determining this difference you may take into consideration the reasonable cost of repairs." The Note on Use provides that the bracketed clause is to be used only when there is evidence of the cost of repairs. There is no such evidence in the case.

Watson's testimony that the roller *would have had* the value of $12,000–$15,000 *if* it had been repaired properly. This is not evidence of the fair market value of the roller either before or after B&C worked on it.[6] Therefore, we hold that the trial court clearly erred in awarding Corrugated $12,000 damages. Accordingly, we reverse on this point.

B&C's second point on appeal is that the trial court clearly erred in concluding that it was negligent. Negligence is the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do. *Mangrum v. Pigue*, 359 Ark. 373, 383, 198 S.W.3d 496, 501 (2004). Negligence is never presumed. *Id.*, 198 S.W.3d at 501 (citing *Morehart v. Dillard Dep't Stores*, 322 Ark. 290, 908 S.W.2d 331 (1995)). The burden rests upon the party asserting negligence to show by a preponderance of evidence that his injuries were caused by some negligent act or omission of appellees. *Id.* at 386, 198 S.W.3d at 503. While a party may establish negligence by direct or circumstantial evidence, he cannot rely upon inferences based on conjecture or speculation. *Id.* at 383, 198 S.W.3d at 501.

Corrugated argued that B&C was negligent because it trimmed too much off the roller, and the trial court agreed. However, it cannot be determined that B&C trimmed too much off the roller because Corrugated never presented any evidence of the size of the roller before B&C worked on it.[7] It is undisputed that no one took any measurements of the roller before B&C

---

[6]If Corrugated had sued in contract and prevailed, the figures used by the trial court may have been appropriate because the purpose of damages in a contract action is to place the injured party in the same position he or she would have been in had the contract been performed. *Cozart v. Logue*, 2014 Ark. App. 626, at 4–5, 447 S.W.3d 133, 137.

[7]There was some evidence that the die-cutter machine's original roller would have had a diameter of twenty-two inches; however, Canada stated—in direct response to the trial court's questioning—that he did not know if the roller at issue was the original.

made repairs to it. Without evidence of the dimensions of the roller before B&C worked on it, it is impossible to conclude that B&C removed more than twenty one-thousandths of an inch from it. In fact, there is no evidence in this record how much B&C trimmed from the roller. All that was proved was that B&C trimmed the roller an amount sufficient to make it round and true—the precise amount is unknown. Because Corrugated failed to prove the size of the roller before B&C worked on it, there was no proof that the roller could have been made round and true by taking off twenty one-thousandths of an inch or less, and there was no proof that the diameter that remained after the roller was trued up would be big enough to print on box material.

Moreover, without knowing the measurements of the roller, it is entirely possible that the diameter of the roller was too small to print *before* B&C worked on it. Canada testified that he never observed the roller in operation in Pennsylvania, and there was no evidence that the previous owner used it in its broken state. In its broken state, the roller was thirty-six-years old, rusty, cracked, missing parts, out of round, and "worn out." In that condition, it is possible that it was too small to print on any thickness of box material and that no repairs could have made it print.

For these reasons, we hold that Corrugated failed to present evidence to support its negligence claim. And negligence is not imposed in the absence of proof. *Mangrum*, 359 Ark. at 386, 198 S.W.3d at 503. Without proof, the trial court must have relied on conjecture and speculation, which cannot be permitted to supply the place of proof. *Id.*, 198 S.W.3d at 503.

Therefore, we hold that the trial court clearly erred in finding that B&C was negligent. Accordingly, we reverse on this point as well.

B&C's third and final point on appeal is that the trial court clearly erred in failing to assign comparative fault to Corrugated. Because we hold that Corrugated failed to prove that B&C was negligent, this point is moot.

Reversed and dismissed.

ABRAMSON and KINARD, JJ., agree.

*Smith, Cohen & Horen, PLC*, by: *Matthew T. Horan*, for appellant.

*Robertson, Beasley, Shipley & Redd, PLLC*, by: *Mark E. Ford*, for appellee.