2015 Ark. App. 255

**Calvin IVORY, Appellant**

v.

**WOODRUFF ELECTRIC COOPERATIVE CORPORATION, Appellee**

**No. CV–14–698**

Court of Appeals of Arkansas, DIVISION II.

Opinion Delivered April 22, 2015

Rehearing Denied June 3, 2015

Etoch Law Firm, Helena, by: Louis A. Etoch, for appellant.

Friday, Eldredge & Clark, LLP, Little Rock, by: James C. Baker and Tory H. Lewis, for appellee.

M. MICHAEL KINARD, Judge

Appellant Calvin Ivory filed a negligence suit against appellee Woodruff Electric Cooperative Corporation after a fire destroyed Ivory's house. He alleged that Woodruff was negligent in the maintenance of its electric poles, lines, and transformers located near his property in that Woodruff had refused to exercise ordinary care by taking measures to prevent known wildlife in the area from interfering with the electrical equipment. Ivory claimed that this allowed a squirrel to interfere with the electrical equipment, which caused the fire that destroyed his property. Ivory also alleged that he was entitled to recover damages under the theory of res ipsa loquitur. The trial court granted summary judgment to Woodruff. Ivory now appeals, arguing that the trial court erred in determining that Woodruff did not owe him a duty and that res ipsa loquitur did not apply. We find merit in his first point and reverse and remand.

In its motion for summary judgment, Woodruff argued that, as a matter of law, it had no legal duty to foresee or protect against harm caused by squirrels. Woodruff also argued that Ivory could not recover under res ipsa loquitur because Woodruff did not maintain control over all of the instrumentalities that led to the fire, including the squirrel and the vacant lot where the fire originated, and the injury occurred absent any negligence on its part. Ivory responded to the motion, and both parties attached excerpts from the deposition of Carl Horton, Woodruff s vice president of member services.

Horton testified that one of Woodruffs goals was to provide safe electrical service. He said that the fire was caused when a squirrel got on the transformer and created a fault current by touching either the top of the bushing or the wire next to the bushing. This caused a line to burn and fall to the ground dropping molten metal. A grass fire started that burned across a lot to Ivory's house.

Horton testified that a critter guard is a device that can be put on transformers to try to keep animals from making contact with the bushing. He said that the transformer where the fire started did not have a critter guard because it was not Woodruff's standard practice to put critter guards on all transformers. Woodruff did put critter guards on transformers that had a history of wildlife-related outages, but this location had never had a wildlife-related outage. Woodruffs newer model transformers were equipped with critter guards and protective covered wire that prevented many contacts from animals and tree limbs. This location did not have covered wire.

Horton said that electric companies know that squirrels can cause a fault current and that it was "pretty common" for a squirrel to cause an outage. He said that those outages sometimes cause the power lines to spark, and the lines can burn and fall to the ground. Horton said that it was not necessarily true that Ivory's house would not have burned if this transformer had a critter guard because critter guards are not one hundred percent effective in preventing animals from causing damage. Horton said that this transformer was in compliance with all of Woodruffs policies as well as the requirements of the National Electric Safety Code, the Public Service Commission, and the Rural Utilities Service.

The trial court found that Woodruff did not have a duty to protect Ivory from

damage caused by wild animals under these circumstances. The court also found that the doctrine of res ipsa loquitur did not apply because Ivory's real- and personal-property damage was not caused by an instrumentality that was under the exclusive control of Woodruff.

Summary judgment is to be granted by the circuit court only when it is clear that there are no genuine issues of material fact to be litigated. *Clark v. Transcontinental Insurance Co.*, 359 Ark. 340, 197 S.W.3d 449 (2004). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

Ivory argues that the trial court erred in ruling that Woodruff did not owe a duty to him. He contends that Woodruff undertook a duty to provide safe electrical services to him, noting Horton's statement that this was a goal of Woodruffs. Citing cases from other jurisdictions for the principle that a property owner has no legal duty to guard against damages caused by wild animals, Woodruff argues that, as a matter of law, it did not have a duty to protect Ivory from the damage caused by the squirrel. Woodruff notes that Ivory did not cite a single statute, case, or regulation that imposes a duty to install a critter guard on the transformer.

The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury. *Central Oklahoma Pipeline, Inc. v. Hawk Field Services, LLC*, 2012

Ark. 157, 400 S.W.3d 701. An electric company has a duty to inspect and maintain its power lines in proper and safe working order. *Clark, supra.* Prior decisions involving actions against electric companies in Arkansas are fairly consistent in holding that it is the duty of those utilities to exercise ordinary and reasonable care in the erection and maintenance of power lines. *Id.* (citing *Stacks v. Arkansas Power & Light Co.*, 299 Ark. 136, 771 S.W.2d 754 (1989)). Electric companies, however, are not insurers against accident or injury and are not held liable for injuries that cannot be reasonably foreseen. *Id.* (citing *Arkansas Power & Light Co. v. Lum*, 222 Ark. 678, 262 S.W.2d 920 (1953)).

In *Bellanca v. Arkansas Power & Light Co.*, 316 Ark. 80, 870 S.W.2d 735 (1994), an employee of appellee activated the electrical power at appellant's mobile home, at appellant's request, and also turned the switches on in the breaker box. Appellant was making electrical repairs and did not want the breaker switches turned on. A box sitting on an electric stove inside the mobile home ignited when the breaker switch was turned on, and the residence and its contents were damaged. Appellant filed suit, and appellee filed a motion for summary judgment, which was granted. The supreme court noted that there was, without question, a duty to act reasonably when supplying power, and it reversed with regard to the existence of a duty. The supreme court held that the trial court erred in limiting its holding to deciding as a matter of law that there was no duty to inspect the customer's premises prior to activating service and ignoring that there was a broader duty of reasonable care in supplying power. The supreme court held that whether activation of appellant's breaker switches constituted a breach of the duty of reasonable care was a question of fact to be left to the finder of fact.

■ Here, while Ivory did not present evidence of a regulation requiring critter guards in these circumstances, this ignores the broader duty of reasonable care. Although a party's compliance with industry or statutory-safety standards is proper evidence on the question of negligence, it is not conclusive because it is not necessarily a complete discharge of the party's duties toward the public. *Little Rock Land Co. v. Raper*, 245 Ark. 641, 433 S.W.2d 836 (1968); *see also Arkansas Power & Light Co. v. Johnson*, 260 Ark. 237, 538 S.W.2d 541 (1976) (discussing testimony that, even though the specific standards of the National Electric Safety Code were complied with, these were minimum standards that were not practical for this particular installation). It is the duty of an electric company to use ordinary care to provide and install proper electrical service equipment, AMI Civ. 1401 (2014), and ordinary care is the care a reasonably careful person would use under circumstances similar to those shown by the evidence. AMI Civ. 303 (2014); *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004). We reverse and remand the order of summary judgment based on the existence of a duty as a matter of law. It will be up to the trier of fact to determine whether Woodruff breached its duty to Ivory, whether the occurrence was foreseeable, and whether the negligence, if any, was a proximate cause of Ivory's damages. *Clark, supra.*

■ Ivory also argues that the trial court erred in ruling that the doctrine of res ipsa loquitur was inapplicable. The doctrine of res ipsa loquitur was developed to assist in the proof of negligence where the cause is connected with an instrumentality in the exclusive control of a defendant. *Johnson v. M.S. Development Co., LLC,* 2011 Ark. App. 542, 386 S.W.3d 46. It applies where the evidence of the true cause is available to the defendant but not to the plaintiff. *Id.* The doctrine, when applicable, allows the jury to infer negligence from the plaintiff's evidence of circumstances surrounding the occurrence. *Id.* To invoke the doctrine of res ipsa loquitur, a plaintiff must show that (1) the defendant owes a duty to the plaintiff to use due care; (2) the accident is caused by the thing or instrumentality under the control of the defendant; (3) the accident that caused the injury is one that, in the ordinary course of things would not occur if those having control and management of the instrumentality used proper care; and (4) there is an absence of evidence to the contrary. *Id.*

Ivory argues that Woodruff owed him a duty to provide safe electrical services; that the electrical equipment was under Woodruff's control; and that the fire would not have occurred had Woodruff exercised proper care and installed a critter guard. Woodruff argues that several instrumentalities that caused or contributed to the damage were not within its control or management, including the squirrel, the lot where the grass fire started, and the conditions that caused the fire to spread from the lot onto Ivory's property.

We agree that the doctrine of res ipsa loquitur does not apply here. The squirrel was clearly not within Woodruff's exclusive possession and control. Furthermore, this is not a case where the evidence of the true cause of the accident is available to the defendant but not to the plaintiff. We find no error in the trial court's ruling on the applicability of res ipsa loquitur, but we reverse and remand the summary judgment on the claim for negligence.

Reversed and remanded.

Glover and Hixson, JJ., agree.